IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RICCARDO SANSONE, )
)
Plaintiff, )
) No. 14 C 8418
vs. )
) Magistrate Judge Schenkier
KORMEX METAL CRAFT, INC., )
)
Defendant. )

# MEMORANDUM OPINION AND ORDER[1]

In a one count complaint (doc. # 1) filed on October 27, 2014, plaintiff Riccardo Sansone ("plaintiff" or "Mr. Sansone") contends that he was fired from his job as general manager at defendant Kormex Metal Craft, Inc. ("defendant" or "Kormex") because of his age. Now before the Court is defendant's motion for summary judgment (doc. # 38). Defendant has also filed a motion for sanctions under Fed. R. Civ. P. 11, arguing that plaintiff has pursued this case even after being fully aware that his factual contentions do not support a finding of age discrimination (doc. # 40). Because the merits of the sanctions motion rest on the same factual basis as the motion for summary judgment, we decide – and grant – both motions in this opinion.

## I.

Summary judgment is appropriate where the moving party establishes that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

---

[1] On March 4, 2015, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to the Court for all proceedings, including entry of final judgment (doc. # 21).

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where the movant shows that there is an absence of evidence to support the nonmoving party's case, the nonmovant "must go beyond the pleadings (*e.g.*, produce affidavits, depositions, answers to interrogatories, or admissions on file), to demonstrate that there is evidence upon which a jury could properly proceed to find a verdict in her favor." *Modrowski v. Pigatto*, 712 F.3d 1166, 1168-69 (7th Cir. 2013) (internal citations and quotations omitted).

In deciding a motion for summary judgment, we "construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Majors v. Gen'l Elec. Co.*, 714 F.3d 527, 532 (7th Cir. 2013). We do not "assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence." *Stokes v. Board of Educ. of the City of Chicago*, 599 F.3d 617, 619 (7th Cir. 2010). That said, we are mindful that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

## II.

In support of its motion, Kormex has submitted a Local Rule 56.1 statement of material undisputed facts (doc. # 237: SOMF). Plaintiff has responded to the SOMF (doc. # 257: Pl. Resp. to SOMF), and has filed its own statement of additional undisputed facts (*Id.*: SOAF), to which A&D has responded (doc. # 275: Def. Resp. to SOAF). "In determining what is disputed, we focus not only on whether the parties profess to dispute a fact, but also on the evidence the parties offer to support their statements." *Barkl v. Kaysun Corp.*, No. 10 C 2469, 2011 WL 4928996, at *1 n.2 (N.D. Ill. Oct. 13, 2011) (citing *Zitzka v. Vill. of Westmont*, 743 F. Supp. 2d 887, 899 n.2 (N.D. Ill. 2010)). "We review only those facts whose substance would be

admissible at trial under a form permitted by the Federal Rules of Evidence, although the form produced at summary judgment need not be admissible." *Wragg v. Vill. of Thornton*, 604 F.3d 464, 466 (7th Cir. 2010). The following facts are undisputed unless otherwise noted by the Court.[2]

Mr. Sansone was born on June 5, 1963; he is currently 52 years old (Pl. Resp. to SOMF ¶ 1). He worked for defendant Kormex as its general manager from 1994 until his termination on September 5, 2014 (Pl. Resp. to SOMF ¶¶ 2, 3). At the time of plaintiff's termination, the majority shareholder of Kormex was Grace Whang; her son, daughter-in-law and nephew, Paul Kim, were minority shareholders (Pl. Resp. to SOMF ¶ 5). Paul Kim was an agent and representative of Grace Whang, although he was not an employee of Kormex (Pl. Resp. to SOMF ¶ 6).

As general manager, Mr. Sansone ran the day to day operations of the company, including "sales, purchasing, inspection, engineering, shipping, etc." (Pl. Resp. to SOMF ¶ 3). Mr. Sansone never received formal, written discipline from anyone at Kormex, but he did occasionally receive informal, verbal disciplinary warnings from Ms. Whang or her agents (Def. Resp. to SOAF ¶ 2). Ms. Whang testified that plaintiff was late to work "many times," although she could not recall specific dates he was late (Def. Resp. to SOAF ¶ 7). She also testified that plaintiff reported sales to her every month and that his sales performance varied over time (Def. Resp. to SOAF ¶ 3).

---

[2] Mr. Sansone attempts to create issues of material disputed fact by arguing that he was not aware or does not have personal knowledge of certain facts in defendant's SOMF. His attempt to characterize undisputed facts as disputed merely because he disagrees (without evidentiary support) that they exist, or has no knowledge to admit or deny them, will not defeat summary judgment. *Bordelon v. Chicago School Reform Bd. of Trustees*, 233 F.3d 524, 528 (7th Cir. 2000) (Rule 56.1 not satisfied by "evasive denials that do not fairly meet the substance of the facts asserted . . .").

In the summer of 2014, Mr. Kim negotiated with Mr. Sansone about selling Kormex to Mr. Sansone (Def. SOMF ¶ 8). Mr. Kim testified that during these negotiations, Mr. Sansone insulted him (*Id.*). Mr. Sansone denies that he was insulting to Mr. Kim, but he presents no evidence to show that Mr. Kim did not consider Mr. Sansone's behavior insulting. In any event, defendant neither wrote up Mr. Sansone for insubordination nor terminated his employment at that time.

The negotiations between defendant and Mr. Sansone for the purchase of Kormex fell through. In October 2014, Kormex sold its assets to RRL Group, LLC. ("RRL"), a company owned by Nathan Chaney and Beth Chaney (Pl. Resp. to SOMF ¶ 7). Prior to the sale, Mr. Chaney came to Kormex to observe the operations and Mr. Sansone (Def. SOMF ¶¶ 11, 12). Mr. Sansone was aware that Mr. Chaney was coming to observe operations as part of his due diligence prior to buying Kormex's assets as evidenced by an August 13, 2014 email Mr. Sansone sent Paul Kim reflecting his knowledge of the reason for Mr. Chaney's visit (*Id.*).[3] In the email, Mr. Sansone also mentioned that he was currently negotiating his salary with Mr. Chaney, in anticipation of Mr. Sansone working for Mr. Chaney after the sale of Kormex.[4] According to Mr. Kim, the salary negotiations between Mr. Sansone and Mr. Chaney fell through because Mr. Sansone demanded too high a salary (Pl. Resp. to SOMF ¶ 10).[5]

---

[3] Mr. Sansone does not dispute that Mr. Chaney came to Kormex to observe operations and evaluate Mr. Sansone's performance, but disagrees that he, personally, knew all the reasons why Mr. Chaney was there. This assertion of lack of personal knowledge about all the reasons Mr. Chaney was at Kormex does not create an issue of material fact.

[4] In the email, Mr. Sansone told Mr. Kim that, "[h]ere is the latest update on my employment agreement with Nathan [Chaney]. We have almost come to an agreement on the salary part of the contract but the non compete needs to be modified . . . I know that Alan is doing all he can to make this deal go thru, such as having Nathan come to observe the Kormex operations next week . . ."

[5] Mr. Sansone denies that he demanded too high a salary from Mr. Chaney or that this was the reason Chaney did not hire him to come to work at RRL. This denial does not create a dispute of material fact because it does not matter for the purposes of this motion why Mr. Chaney did not hire plaintiff to work at RRL.

4

During his visit, Mr. Chaney spoke to various workers at Kormex and also talked to some of Kormex's customers (Pl. Resp. to SOMF ¶ 13). Mr. Kim testified that Mr. Chaney told him that plaintiff would not be a good fit for the company because he was not a good leader and was not motivated (SOMF ¶ 14).[6] Mr. Kim also testified that Mr. Chaney recommended that Kormex terminate the plaintiff, and that Mr. Chaney indicated that he would not buy Kormex if plaintiff was still employed there as general manager (SOMF ¶¶ 15, 16, 17). Mr. Kim testified that Mr. Chaney's expressed unwillingness to proceed with the acquisition of Kormex if Mr. Sansone remained as general manager was a reason for terminating plaintiff (SOMF ¶ 17).[7]

Ms. Whang gave Mr. Kim permission to terminate plaintiff, which Mr. Kim did on September 5, 2014 (SOMF ¶¶ 2, 19). On that date, Mr. Kim gave Mr. Sansone a letter informing him that he was terminated and giving him ten minutes to leave the building (SOMF ¶ 20). The letter did not state the reason or reasons for the terminations (*Id.*). Mr. Kim, Ms. Whang, and Kormex attorney James Song were present when Mr. Sansone was terminated (SOMF ¶ 19). None of the people present said anything to Mr. Sansone when he was terminated, and Mr. Sansone did not say anything in response to receiving the letter (*Id.*).

After plaintiff's termination, Mr. Chaney recommended that Mr. Kim hire Michael Sullivan to replace Mr. Sansone (SOMF ¶ 21). Mr. Sullivan was born on June 4, 1952, and thus is ten years older than Mr. Sansone (*Id.*). Mr. Sullivan formally worked for Kormex for one

---

[6] Plaintiff argues that Mr. Chaney's alleged statements to Mr. Kim are hearsay, and thus not admissible. But the statements are not offered to prove that plaintiff was not a good fit for RRL or that he was not a good leader; they are offered to show Mr. Kim's state of mind as he made the decision to terminate plaintiff. For that purpose, Mr. Kim's statements are not hearsay. *United States v. Macari*, 453 F.3d 926, 941 (7th Cir. 2006).

[7] In addition to the recommendation of Mr. Chaney, Mr. Kim testified that the other reasons for plaintiff's termination were plaintiff's refusal to negotiate his salary down and plaintiff insulting Mr. Kim during the earlier negotiation about plaintiff possibly buying Kormex, which Mr. Kim thought showed insubordination (SOMF ¶ 18). Plaintiff's attempt to dispute these assertions, which we have noted above, are not material to the disposition of the motion.

5

month, until the asset purchase by RRL occurred, at which point he worked for RRL (Def. Resp. to SOAF ¶ 17). Kormex continued to pay Mr. Sullivan's salary until the end of 2014 (*Id.*). Plaintiff testified that he is not familiar with Mr. Sullivan and has no personal knowledge that Mr. Sullivan was hired to replace him (Pl. Resp. to SOMF ¶ 18, 27; Def. Resp. to SOAF ¶ 16). Rather, Mr. Sansone asserts that after his termination, he was replaced by Nathan Chaney, a man in his 30s, and thus substantively younger than plaintiff (Pl. Resp. to SOMF ¶¶ 23, 24).

Plaintiff bases his assertion on the following: (1) that Mr. Chaney spent several weeks at Kormex prior to the asset sale; (2) that, based on conversations with Kormex's customers and Mr. Chaney, it appeared to plaintiff that Mr. Chaney wanted his job; (3) that plaintiff observed Mr. Chaney in the office (prior to plaintiff's termination) talking to plaintiff's assistant, but he does not know the content of the discussion; and (4) that plaintiff observed Mr. Chaney walking around Kormex reviewing products and talking to the people who worked there, although plaintiff does not know the substance of these conversations (*Id.* ¶ 18). Of course, all of these actions by Mr. Chaney are consistent with him performing a due diligence investigation before deciding whether to go forth with the acquisition of Kormex. Moreover, Plaintiff has no documentation to support this assertion that Mr. Chaney assumed his position as general manager, and he acknowledges that he was not at Kormex after his termination and did not observe Mr. Chaney working there (*Id.*). Indeed, Mr. Chaney has never been an employee of Kormex (Def. Resp. to SOAF ¶ 8). Mr. Sansone concedes that he does not know for certain who replaced him after his termination, and did not take steps to confirm who replaced him before filing his lawsuit alleging age discrimination (Pl. Resp. to SOMF ¶¶ 25, 26).

## III.

The Age Discrimination in Employment Act ("ADEA") makes it illegal for an employer "to fail or refuse to hire or to discharge any individual or otherwise discrimination against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To establish a violation of the ADEA, a plaintiff must show that his age actually caused the adverse employment action (here, a termination). *Van Antwerp v. City of Peoria, Ill.* 627 F.3d 295, 297 (7th Cir. 2010). That is, the plaintiff's age must be the "but for" cause of the termination; it is not enough for a plaintiff to produce some evidence that age was one motivating factor in the decision (which, in any event, is not the situation here). *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 177 (2009).

A plaintiff opposing summary judgment may seek to show a triable issue of fact under either the direct or indirect method. *Hutt v. Abbvie Products LLC*, 757 F.3d 687, 691 (7th Cir. 2014). *But cf, Coleman v. Donahoe*, 667 F.3d 835, 863 (7th Cir. 2012) (Wood, J., concurring) (observing that the direct/indirect distinction is unnecessarily complicated and that "the time has come to collapse all these tests into one"). The direct method requires a plaintiff to provide either direct (*i.e.*, "smoking gun") or circumstantial evidence of discrimination that would permit a trier of fact to find that unlawful discrimination caused the adverse job action. *Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 840 (7th Cir. 2014). In this case, plaintiff does not pursue the direct method of proving discrimination or contend that he has either direct or circumstantial evidence of discrimination. Instead, he proceeds under the indirect, or burden-shifting, method (Pl. Mem. at 4).

Under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the indirect method requires a plaintiff to establish a *prima facie* case of discrimination by adducing evidence that (1)

7

he was a member of a protected class; (2) he was performing his job satisfactorily; (3) he suffered an adverse employment action; and (4) the employer treated similarly situated employees outside the protected class (in this case, substantially younger employees) more favorably. *Bass*, 746 F.3d at 841. If the plaintiff succeeds in making a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its decision. *Ripberger v. Corizon, Inc.*, 773 F.3d 871, 879 (7th Cir. 2014). If the employer articulates such a reason, the burden shifts back to the plaintiff to provide evidence that the employer's reason was a pretext for discrimination. *Naficy v. Ill. Dep't of Human Services*, 697 F.3d 504, 511-12 (7th Cir. 2012).

In this case, defendant is entitled to summary judgment because plaintiff has failed to establish a *prima facie* case of age discrimination. Plaintiff is indeed over the age of forty and experienced an adverse employment action. But where plaintiff's case patently falters is with the fourth element of a *prima facie* case: Mr. Sansone has no evidence that that would allow a jury to reasonably find either that he was replaced by someone considerably younger, or that similarly situated younger employees were treated more favorably than he was.[8]

Throughout this case, plaintiff has steadfastly maintained that he believed he was replaced as general manager by Nathan Chaney, who was in his 30s. But, there is absolutely no competent evidence to support this contention. Instead, the undisputed evidence is that Mr.

---

[8] The parties spar about the second element: that is, whether plaintiff was meeting his employer's legitimate job expectations. The evidence regarding plaintiff's job performance prior to termination – either good or bad – is scant. Ms. Whang testified that Mr. Sansone was late on some occasions and plaintiff does not dispute that he was occasionally given informal, verbal discipline. However, Kormex was not, apparently, in the habit of providing plaintiff with formal performance reviews, and there is no evidence that Mr. Sansone was ever given written notice about performance deficiencies. And, none of the items cited by Ms. Whang or Mr. Kim caused Kormex to terminate plaintiff prior to Mr. Chaney saying he would not go forward with the acquisition unless Kormex fired Mr. Sansone. In any event, given plaintiff's failure to meet the fourth element of the *prima facie* case, whether he has created a triable issue as to whether he was meeting his employer's legitimate expectations does not affect the outcome of the summary judgment motion.

Chaney was at all times a prospective – and then actual – purchaser of Kormex's assets. Plaintiff himself acknowledged this fact in the August 2014 email to Paul Kim, which discussed both (1) plaintiff's salary negotiations with Mr. Chaney in anticipation of going to work for him after the sale, and (2) his recognition that Mr. Chaney would be coming to Kormex to observe operations in the coming weeks.

Plaintiff argues that "it appeared" to him that Mr. Chaney wanted his job because plaintiff observed him walking around the shop, talking to individuals in the office, and reviewing products, which were tasks assigned to the plaintiff (Pl. Resp. to Mot. for SJ at 9). But what plaintiff may subjectively believe or surmise does not create a triable issue, because the record is devoid of any supporting evidence. Plaintiff admits he has no idea what Mr. Chaney discussed with various employees or others during his visits to Kormex. He admits that Mr. Chaney never worked for Kormex at all, and that he has no evidence about Mr. Chaney's involvement with either Kormex or RRL Group after plaintiff's termination. Indeed, given plaintiff's recognition that Mr. Chaney would be observing operations in advance of his purchase of Kormex, his continued insistence that Mr. Chaney must have actually been plotting to take over plaintiff's job is without evidentiary basis.

Mr. Sansone also fails to genuinely dispute defendant's assertion that he was actually replaced as general manager by Michael Sullivan, a man ten years older than plaintiff. Plaintiff has offered no evidence to contradict the testimony that Mr. Kim hired Mr. Sullivan to work as general manager at Kormex on the recommendation of Mr. Chaney. Mr. Sansone's contention that he, personally, has no idea who Mr. Sullivan is or what role he took on after plaintiff's termination does nothing to change the undisputed fact that Mr. Sullivan, a man ten years older than plaintiff, became general manager in his place after plaintiff's termination.

9

Plaintiff's attempt to create a dispute of fact on the basis that Mrs. Whang still owns 51 percent of Kormex also fails. As far as the Court can discern, plaintiff argues that, because Kormex existed in some form after the asset sale to RRL, the August 13, 2014 email plaintiff sent Mr. Kim does not establish that he knew Mr. Chaney intended to buy Kormex (and thus, it is reasonable to infer that Mr. Chaney was actually planning to take over plaintiff's job (Pl. Mem. at 10-11 and Def. Resp. to SOAF ¶ 24). That is, because Kormex did not cease to exist after the asset sale, there is a dispute of fact about who, if anyone, took over plaintiff's job at Kormex (as opposed to who became general manager at RRL). However, plaintiff offers no meat to put on the bones of this assertion. Plaintiff offers no evidence about the structure of Kormex after the asset sale aside from Ms. Whang's testimony that she still owns 51 percent of Kormex. The fact that Kormex may have continued to exist or operate in some form after the asset sale to RRL has no bearing on the undisputed facts that Mr. Sansone was not replaced as general manager by Mr. Chaney, and that the only person who took on a general manager role after Mr. Sansone's termination was Mr. Sullivan.[9]

Finally, plaintiff argues for the first time in his summary judgment response that a number of similarly situated, younger Kormex employees were treated more favorably that him because they were not fired when plaintiff was (Pl. Mem. at 6 and Pl. SOAF ¶ 20). Defendant urges us to disregard this assertion because plaintiff did not identify any of these individuals in his Rule 26(a) initial disclosures as people who may possess discoverable information in this case, or in response to an interrogatory asking plaintiff to disclose evidence supporting his

---

[9] During Ms. Whang's deposition, plaintiff's attorney implied that, because Ms. Whang still owns 51 percent of Kormex, she must have sold only 49 percent to Mr. Chaney (Deposition of Grace Whang at 49). This is an inaccurate inference; Ms. Whang and Mr. Kim testified that they sold the assets of Kormex to RRL. The fact that Ms. Whang may still own 51 percent of whatever was left of Kormex after the asset sale does not mean that she only sold 49 percent of the entire company; she may very well have sold Mr. Chaney all of Kormex's assets and now owns 51 percent the remaining shell. In any event, the uncertainty surrounding the exact terms of the sale of Kormex does not create a dispute of material fact because plaintiff has produced no evidence that anyone other than Michael Sullivan took over plaintiff's job after his termination.

10

allegations of age discrimination (Def. Reply at 6-7). We agree that the evidence Mr. Sansone now seeks to offer of these alleged comparators was information he was obligated to reveal during discovery, and that his failure to do so warrants barring him from attempting to use that evidence now. *See*, Fed. R. Civ. Pl. 37(c)(1); *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003).

But even if plaintiff was not obligated to identify these workers earlier, he offers no competent evidence about them sufficient to create a genuine material fact as to whether they were similarly situated to him. *Balance v. City of Springfield*, 423 F.3d 614, 617 (7th Cir. 2005) (plaintiff has burden to present evidence that similarly situated individuals outside the protected group were treated more favorably). To determine whether two employees are similarly situated, the Seventh Circuit looks at a number of factors, "which most often include whether the employees (1) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications." *Bisluk v. Hamer*, 800 F.3d 928, 935 (7th Cir. 2015). Plaintiff fails to present any evidence of these factors with respect to the twelve employees he names, much less the specific age of each person. Nor does he dispute the affidavit of Paul Kim, which identifies each employee as an hourly, non-exempt, blue collar worker. And, far from having the same supervisor as plaintiff, the twelve employees he named actually reported to him. *See Barricks v. Eli Lilly and Co.*, 481 F.3d 556, 560 (7th Cir. 2007) (plaintiff failed to show that co-workers who got raises when she did not were similarly situated because record contained no evidence of co-workers' ages and they did not have a common supervisor with plaintiff). Finally, plaintiff offers no evidence to substantiate his contention that these employees were in fact retained after the

sale of Kormex to RRL, or in what capacity each worker may have been employed after the sale went through.

Simply put, plaintiff has offered no evidence that he was either replaced by a younger individual, or that similarly situated younger workers were treated more favorably. Plaintiff's mere speculation does not fulfill his burden to establish a *prima facie* case of age discrimination. *See Cardoso v. Robert Bosch Corp.*, 427 F.3d 429, 433 (7th Cir. 2005).[10]

## IV.

Our discussion does not end here, because defendant has also filed a motion for Rule 11 sanctions against plaintiff and his attorney.[11] We now turn to that motion.

Rule 11(b)(3) and (4) state that, "[b]y presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery, [and] (4) the denials of factual contentions are warranted on the evidence . . ." Rule 11 sanctions may be imposed on an attorney, a litigant, or both. *See* Rule 11(c)(1), *Corley v. Rosewood Care Ctr., Inc. of Peoria*, 388 F.3d 990, 1011-12 (7th Cir.2004). "The central goal of Rule 11 is to deter abusive litigation

---

[10] Because plaintiff fails to make a *prima facie* case, defendant is entitled to summary judgment irrespective of whether plaintiff has offered evidence to create a triable issue as to whether Kormex's articulated reasons for termination are pretextual. *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 327 (7th Cir. 2002). That said, we note that plaintiff offers no evidence to cast doubt on at least one of defendant's proffered reasons, namely that Mr. Chaney thought plaintiff would not be a good fit for the company and refused to go through with the purchase unless Mr. Sansone was terminated.

[11] There is no dispute that defendant complied with the prerequisites to filing its Rule 11 motion. On September 23, 2015, defendant served plaintiff with a copy of its motion for Rule 11 sanctions, which rested on plaintiff's refusal to withdraw his complaint, despite knowing that he had no evidence of age discrimination to support his claim. Consistent with Rule 11(c)(2), defendant filed its motion for summary judgment and motion for sanctions in this Court 21 days later.

practices." *Corley*, 388 F.3d at 1013. Rule 11 thus serves to protect both courts and parties against "callous disregard for governing law or the procedures of the court." *Allison v. Dugan*, 951 F.2d 828, 834 (7th Cir.1992).

The fact that a party fails to prevail on a claim does not mean that sanctions are appropriate under Rule 11. Rather, before imposing sanctions, the court must "undertake an objective inquiry into whether the party or his counsel should have known that his position is groundless." *Cuna Mut. Ins. Soc. v. Office & Prof'l Emps. Int'l Union, Local 39*, 443 F.3d 556, 560 (7th Cir. 2006). It is up to the discretion of the trial court to impose sanctions, in light of the available evidence. *In re Dairy Farmers of America, Inc.*, 80 F.Supp.3d 838, 860 (N.D. Ill. 2015), *citing Divane v. Krull Elec. Co., Inc.*, 200 F.3d 1020, 1025 (7th Cir. 1999).

Defendant argues that plaintiff and his attorney filed the complaint despite clear evidence (the August 2014 email from plaintiff to Paul Kim) that plaintiff knew Mr. Chaney was not going to take his job as general manager, but was instead looking to purchase Kormex's assets. Further, even if plaintiff had a reason to believe he was replaced by a younger individual at the time he filed his complaint, defendant argues that the evidence produced during discovery demonstrated that not only was plaintiff's belief unsupported, but that he was actually replaced by an older individual. *See, D'Aquino v. Citicorp/Diner's Club, Inc.*, 139 F.R.D. 357, 361 (N.D. Ill. 1991) (plaintiff's filing of age discrimination complaint after investigation that revealed only a "suspicion" of discrimination, and subsequent failure to withdraw complaint after discovery disclosed paucity of plaintiff's claims, was sufficient to warrant imposition of Rule 11 sanctions).

In response, plaintiff merely reiterates his argument in response to the motion for summary judgment that there is a genuine issue of fact as to who, if anyone, replaced plaintiff.

He ignores the uncontradicted evidence that he was replaced as general manager by Michael Sullivan, a man ten years his senior, and contends instead that he still does not know for sure who replaced him.

It is true, as plaintiff states, that a mere disagreement about the facts is not on its own grounds for sanctions under Rule 11. But, that disagreement must be based on more than a plaintiff assuming the posture of an ostrich and firmly placing his head in the sand. *Fred A. Smith Lumber Co. v. Edidin*, 845 F.2d 750, 753 (7th Cir. 1988 (awarding fees and costs under Rule 11 and stating that counsel cannot employ the "ostrich-like" tactic of pretending that potentially dispositive authority against a litigant's contention does not exist"). In this case, plaintiff was confronted with undisputed evidence that he was not terminated because of his age. By the end of discovery, plaintiff knew or should have known that (1) Mr. Chaney had purchased Kormex's assets and had not taken on the role of general manager, and (2) Mr. Sullivan, a man ten years older than plaintiff, had become general manager in plaintiff's place. As we have explained, plaintiff has offered no competent evidence to the contrary. His willful disregard of the evidence against him is not enough to defeat summary judgment; and, it is not enough to protect him from Rule 11 sanctions.

## **CONCLUSION**

For the reasons stated above, we grant summary judgment (doc. #38) for the defendant. We also grant defendant's motion for Rule 11 sanctions (doc. #40). In doing so, we find that plaintiff and his attorney have violated Rule 11 by "later advocating" a pleading (the complaint) which contained "factual contentions" they knew did not have evidentiary support, Fed. R. Civ. P. 11(b)(3), and by making "denials of factual contentions" which were not warranted on the

evidence. Fed. R. Civ. P. 11(b)(4).[12] We therefore order plaintiff and his attorney to pay defendant's costs and attorneys' fees incurred after September 23, 2015, the date defendant served its motion for sanctions on the defendant. This amount should include the costs and fees defendant incurred to draft and file its motion for summary judgment (but not the sanctions motion), as well as the costs and fees incurred to file the replies in support of both the motion for summary judgment and the motion for sanctions. By April 28, 2016, defendant shall provide plaintiff with an accounting of these costs and fees. The parties shall meet and confer to attempt to resolve any disputes about these costs and fees. The matter is set for a status hearing on May 12, 2016 at 9:00 a.m.

**ENTER:**

SIDNEY I. SCHENKIER
**United States Magistrate Judge**

**DATED: April 14, 2016**

---

[12] The commentary to the 1993 amendments to Rule 11 explains that subsection (b) "emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable and by generally providing protection against sanctions if they withdraw or correct contentions after a potential violation is called to their attention."